INHABITANTS OF NORWICH & others *vs.* COUNTY COMMISSIONERS
OF HAMPDEN & others.

Where part of a town is set off from one county, and annexed to a town in another county,
by a statute which provides that " all taxes heretofore assessed shall be paid in the same
manner as heretofore," and that the first town " shall be holden to make the same appro-
priations on the territory thus set off, for roads, the current year, as though this act had
not passed;" a highway which the county commissioners of the first county, before the act
of separation took effect, laid out and ordered to be built by the first town, must be com-
pleted by that town, and its completion may be enforced by said commissioners, if it be
proved that the town made an appropriation and assessed a tax for the purpose before
the act took effect; but not otherwise.

PETITION by the town of Norwich, Reuben L. Bromley, of
Chester, and Chester A. Dewey and Lyman Dimock, of Nor-
wich, for a mandamus to compel the building and completion
of a section of highway lying in that part of the town of Nor-
wich, (the name of which has been since changed to Hunting-
ton by *St.* 1855, *c.* 35,) in the county of Hampshire, which was
set off from the town of Chester in the county of Hampden by
*St.* 1853, *c.* 421, passed on the 25th of May 1853.

The petition alleged that said highway was adjudged by the
county commissioners of Hampden, on the fourth Tuesday of
June 1852, after due notice and hearing, to be of common con-
venience and necessity; and at an adjourned meeting, held on
the 13th of October 1852, after due notice, was located by said
commissioners, and specific directions given by them as to its
mode of construction, and a time fixed for removing trees, &c.,
and damages assessed to all persons interested; that said high-
way was laid in Chester, within the limits and boundaries of that
town as then established, and said commissioners had jurisdic-
tion in the premises, and said highway, as laid, became estab-
lished, and said commissioners ordered the town of Chester to
build and complete the same on or before the 1st of July 1853,
whereby it became the duty of the town of Chester to make and
complete said highway in the time and manner prescribed by the
commissioners, and to their acceptance, and, in the default or
neglect of the town, it became the duty of said commissioners to
cause the same to be completed; and, though said town of

Chester, at their meeting held on the 7th of March 1853, in pursuance of an article in their warrant calling said meeting, voted to raise a sum of money sufficient or nearly sufficient for the making and completing of said road, under an estimate of the cost thereof, exclusive of other appropriations voted, and raised and collected a tax for the same; yet no money was in terms voted or raised for this specific object; and the town of Chester neglected and refused to make and complete said highway, to the acceptance of said commissioners, and still so neglect and refuse: That said Bromley and Dewey, and other persons interested in the making and completion of said road, thereupon, on the 27th of December 1853, presented their petition to said commissioners at a regular meeting, praying them to enforce the execution of the order aforesaid upon the town of Chester; but said commissioners, after hearing and considering the same, dismissed said petition : That by *St.* 1853, *c.* 42, that portion of the territory of Chester, upon which said highway was located and ordered to be built, was set off from Chester and annexed to Norwich, and said road, if thus built, would be within the limits of Norwich, and kept in repair by that town, and the petitioners were interested in its building and completion by the town of Chester; and that said town, notwithstanding such setting off and annexation, was not exonerated from the duty of making and completing said road. The prayer was that the court would issue an order of notice to said commissioners and to the town of Chester, to show cause why a mandamus should not issue; and, if necessary, issue a writ of mandamus, commanding said commissioners and said Chester, one or both, to cause said road to be built and completed. An order of notice was issued accordingly to said commissioners and to the town of Chester.

The county commissioners of Hampden demurred to the petition, on the ground that it did not contain any matter whereon the court could ground any decree or give the petitioners any relief against them.

The argument upon the demurrer was had at Boston on the 12th of January 1855.

15 *

*C. P. Huntington*, for the petitioners. 1. The order for the construction of the road having been issued, and the money raised, before the setting off from Chester to Norwich, the general provisions of law, without regard to the provisions of the act of separation, imposed upon the town of Chester the duty of building the road. Rev. Sts. *c.* 24, §§ 44, 45. *Windham* v. *Portland*, 4 Mass. 384. *Richards* v. *Dagget*, 4 Mass. 539. *First Parish in Brunswick* v. *Dunning*, 7 Mass. 445. *Hampshire* v. *Franklin*, 16 Mass. 86. *Boxford* v. *County Commissioners*, 7 Pick. 340.

2. The act of separation contains an express provision " that all taxes heretofore assessed, or that may be assessed within thirty days from the passage of this act, shall be paid in the same manner as heretofore; and the towns of Chester and Blandford, respectively, shall be holden to make the same appropriations on the territory thus set off, for roads, bridges and schools, the current year, as though this act had not passed." *St.* 1853, *c.* 421, § 1. There is nothing to limit the general word "roads" to highways actually constructed. And the words of this provision, as well as the provision of § 2, for the payment by Norwich to Chester and Blandford of a proportion of their state and county taxes, until the next state valuation, imply that the legislature took into consideration all the burdens then lying upon the town of Chester.

*W. G. Bates & H. Morris*, for the respondents. The territory set off to the county of Hampshire by *St.* 1853, *c.* 421, was thereby taken out of the jurisdiction of the county commissioners of Hampden, as there was no provision for continuing such jurisdiction; and they have no longer any power to discontinue or complete the road. Rev. Sts. *c.* 24, §§ 10, 13, 18, 19, 23, 34, 35, 44, 45. *Springfield* v. *Commissioners of Highways*, 6 Pick. 501. *Springfield* v. *County Commissioners*, 10 Pick. 59. *Opinion of Justices*, 6 Cush. 578. How can the commissioners draw money out of the treasury of one county to build roads in another county?

The provision as to roads, in the *St.* of 1853, does not affect the jurisdiction of county commissioners; and does not apply to roads not actually built. *Loker* v. *Damon*, 17 Pick. 284.

SHAW, C. J.   This is a petition to this court for a writ of mandamus, the object of which is to require the town of Chester to build and complete a certain section of highway and public road, known as the Bromley road, now actually lying within the limits of Norwich, being a part of said town, recently set off from the town of Chester.   This controversy grows out of the construction and operation of *St.* 1853, *c.* 421, setting off parts of the towns of Chester and Blandford, in the county of Hampden, and annexing the same to the town of Norwich, (now Huntington, *St.* 1855, *c.* 35,) in the county of Hampshire.   This act was passed on the 25th of May 1853, and took effect from its passage. After directing that a certain tract of land, described by metes and bounds, be set off to the town of Norwich, there is this provision " Provided, however, that all taxes heretofore assessed, or that may be assessed within thirty days from the passage of this act, shall be paid in the same manner as heretofore ; and the towns of Chester and Blandford, respectively, shall be holden to make the same appropriations on the territory thus set off, for roads, bridges and schools, the current year, as though this act had not passed."

It is alleged in the petition, and admitted by the demurrer, that a sum of money sufficient, or nearly sufficient, to make and complete the section of highway in question, was actually embraced in the votes passed by the town of Chester at their annual meeting in March 1853.   If the amount was actually so embraced by such vote, then it would be embraced in the assessment of the taxes of that year ; and such tax, though not completed and tax bills issued, yet would be considered as if levied on the 1st of May of that year, which was prior to the passage of the above act.   In that case, such tax would be within the terms of the proviso first above mentioned ; it would be a tax assessed before the passage of the act, which the inhabitants of the town of Chester would be obliged to pay ; and the town then having the funds in their own treasury, for that specific purpose, it would be their duty to make the Bromley road at their own expense ; and the county commissioners of Hampden had authority in the premises to cause the road to be built by the town of Chester, in

the mode provided by law, if that town had become liable for the performance of that duty.

*Alternative mandamus issued to the county commissioners.*

Upon the return of the alternative mandamus, answers were filed by the respondents, and a trial had at April term 1855, before *Thomas*, J., who made a report thereof to the full court, reserving all questions of the competency of evidence and of the burden of proof. The case was argued upon this report at Northampton in September 1855. The conclusions of fact at which the court arrived from the evidence reported are stated in the opinion.

*Huntington*, for the relators.

*Bates*, for the respondents.

SHAW, C. J. Upon the case, as now presented, the respondents contend that it does not appear that the sum necessary to make and complete the road was actually voted to be raised, and so levied and assessed, upon the inhabitants of Chester, before the act of separation and annexation took effect. And if this be the fact, the court are of opinion that, as the order of the commissioners, requiring the town of Chester to make this road, was founded solely on the general law, making it the duty of towns to build new highways, ordered by the proper authority to be made within their own territorial limits; and as the time allowed for the performance of such duty had not arrived, when the territory ceased to be within these limits, and, by operation of law, was placed within the limits of another town and another county; and no specific provision was made by the town for the building of the road, before the act took effect; the town were exempted from the performance of that duty, and that this conclusion was not avoided by the provision requiring the town of Chester to make the same appropriations on this territory, for roads, bridges and schools, the current year, as if the act had not been passed. The clause " shall make appropriations " applies to repairs of roads, the duty of providing for which was already fixed.

The court can have no doubt that the burden of proof is upon

the petitioners. They seek to charge the respondent town with a burden, in the nature of a debt or pecuniary obligation, on the ground that, prior to the act of setting off and annexation, they had assessed a tax on the inhabitants, to raise money to build and complete the Bromley road, pursuant to the order of the commissioners; that this tax all the inhabitants, including those of the territory set off, were bound to pay, notwithstanding that such setting off took effect before it was actually paid, and upon this ground they were bound to perform the duty of building such road. Of course, the burden of proof is upon the petitioners to show that such tax was so previously assessed, in order to bring the case within the proviso of the statute.

If the money designed for the building of the Bromley road was embraced in the sum of $3,500 voted at the Chester March meeting of 1853, it was no doubt embraced in the assessment of May 1st, previously to the passing of the act. Upon a full consideration of the report, the court are of opinion that the evidence fails to prove that the estimated cost of the Bromley road was embraced in the sum of $3,500 voted to be raised for schools and other town purposes.

It is argued that, independently of any parol evidence, the vote being to raise $3,500, including $800 for schools, without other specification of objects, the residue must, by necessary implication, be held to be for other town charges, and that the building of the Bromley road was a town charge. The latter is the very point to be proved. If the town of Chester had made a contract for building the road, the corporation would have been bound by their contract; the payment of the contract price would have been a town charge; and if there was no provision in the act of separation, it must have remained a corporate debt. But if it stood on the ground of a town duty, because it was a road laid out within their limits, but before the day of performance had come the road had ceased to be within their limits, then it was not yet a town charge.

. A question naturally arises, whether parol evidence was competent to show what was embraced in the vote, and is therefore matter of record. We are inclined to the opinion that it was

competent. The vote was in general terms to raise $3,500 The evidence was not offered to alter, vary, change or even put a construction upon the terms of the vote; but leaving that un-changed, its object is to show whether a certain aggregate sum there expressed was made up of certain particulars not expressed. But of the admission of this evidence the petitioners have no occasion to complain; it was offered by them, and without it they had no case, because the vote specifies no purpose of rais-ing money for the Bromley road, or any other specified road. Their case depended upon showing that, in point of fact, the purpose of raising money for this road was intended to be, and was embraced in the general vote; and the court are of opinion, upon the evidence reported, that the cost of building the Brom-ley road was not so included, and that the petitioners are not entitled to the remedy prayed for.

*Further proceedings stayed.*